Your argument next in number 2011-5016 ESSEX ELECTRO ENGINEERS v. United States Why don't you wait until everybody gets seated so that in the morning we can begin. If you just give everybody a second to get settled in. I was talking to take advantage of it. Looks like you're outnumbered. It's true most of the time. Very well, Mr. Ailey. May it please the court. This case involves basically a fundamental issue, and that is whether the agency abused its discretion in making an award at a very inflated price after wasting 11 months and making the award only on initial offers.  Abuse of discretion in not holding discussions? Yes. That's the key issue? As far as I can see, Your Honor. Okay. The lower court observed during argument, there of course was no fact findings or conclusions of law, that the agency did not abuse its discretion when it evaluated similar flaws in both solicitations, both offers, initial proposals. The agency inequitably evaluated the strengths offered in ESSEX's proposal. The agency failed to evaluate ESSEX's subcontractors intended to perform the substantial technical requirements and all logistics requirements. You point out repeatedly in your brief this 11-month delay in the process, but you don't point to any prejudice. What's the point of referencing that issue? Well, I believe that the prejudice is the fact that they wasted this time without conducting discussions when discussions were called for without abusing their discretion. In this case, the abuse of discretion… You're suggesting that this would be a different case if there was a rush to get it done and they decided they didn't have time for discussions. The 11-month point is they had time for discussions. The lower court asked me that question and I answered yes. I think that it would be a different case. In most cases, when they don't conduct discussions, it's because an award is immediate and there is an urgent requirement. When you have plenty of time to conduct discussions, particularly with the price difference here, the agency simply waited and then got rid of everybody else, made the award to AJAC, and after not conducting discussions. This case is very similar to Allied Technology. The monster communications case is usually referred to it. The one difference there is discussions were conducted. There, the initial offer of a monster was a violation of the Anti-Deficiency Act. And clearly, you could say it was not eligible for the award. Now, as the court found, there was a large price difference. It was not as large as this price difference in this case, but a large price difference. And after they conducted two rounds of discussions, the agency did not abuse of discretion and make the award monster because they could not ignore the price difference. Here, of course, the only difference is there were no discussions conducted. Are you arguing that the solicitations were identical as it relates to the reference to discussions? Well, the solicitations were. In fact, most solicitations on best value procurements involve the agency having or presumably having discretion to conduct discussions or not without when the prices are essentially equal. The solicitation here and most of them say that the price may be the least important, but it cannot be ignored because it is important. Are you saying that we should imply into the provision that gives the agency discretion to conduct discussions and obligation to conduct discussions? No. I'm saying I think that the standard for this case and all cases, protests, is whether they acted rationally, whether they abused discretion, whether they acted illegally. Here, one of the standards that is applicable is abuse of discretion. They had the discretion. The question is, did they abuse it? And here, I think, considering all of the factual matters involved in the evaluations, including the same evaluation of the same Essex by the same evaluators and the same agency on a companion procurement where they found Essex satisfactory and they did not find an Essex satisfactory here, is one of those matters. Now, the court did not allow that to be supplemented into the record. I think that that was basically clearly erroneous. It was a matter that was before the agency. It was known by the agency. Obviously, the same evaluators knew what they did. The same contracting officer knew what she did. So the matter was before the agency. Axiom has been interpreted by the federal claims court in four recent decisions, one of which we cite in our case, which is... Is there any authority that either at the claims board, at the GAO, or in our court, that when there's no requirement for discussions, that the failure to hold discussions can be an abuse of discretion? Well, Your Honor, I think that the Allied Technology case is... Actually, the only case I could find that's similar to this case is Allied Technology. Now, there, the court found there was no abuse of discretion in conducting discussions with a company that was clearly not... Well, there was no abuse of discretion in conducting the discussions. Yes. What I'm asking, is there any case that addresses the question of whether it's an abuse of discretion not to hold discussions? I know of none, Your Honor. I don't think any have been cited either. But you're asking us to say that, then, in the first instance? I think I said in the main brief that this case may be unique, and the situation is unique. You've got a 44% price difference that the agency ignored when the solicitation barred them from ignoring it. Then there was a lot of other things done by the agency, one of which was not evaluating the subcontractors that AJECT intended to use for most of the work. Now, it's hard to say evaluations are equal when the Essex, of course, doesn't use subcontractors, which is one of the reasons why their price is lower. They've always, for probably 50 years, performed all of these functions on logistics and technical, and they've made generator sets, they've made load banks like here. The offer of Essex listed 60 contracts that were load banks that Essex had performed. The question here, it's a mixed... It's a fundamental question that involves a set of facts. The facts are what establish the abuse of discretion. If there's no abuse of discretion here, I would submit there can never be an abuse of discretion. If the discretion, if the option of making an award regardless of price, regardless of unequal evaluation, regardless of the circumstances, is unfettered, then I agree you cannot find abuse of discretion because there is no discretion. They can do whatever they want. Now, if that's what it meant here, then abuse of discretion is not applicable to any of these cases. If they can do what they want, then so be it. They can do what they want. So you're saying it has to be cabined by something? It has to be satisfied by reasonable, by being reasonable. The question here, and I think that the facts establish that it was not reasonable for them to not conduct discussions when they had the time and when the evaluations were clearly unequal and the price difference was so dramatic. Let's get to what you wanted them to discuss. So you're saying it was abuse of discretion not to ask you essentially whether you really meant what you said in your proposal. Well, Your Honor, it would be abuse of discretion not to ask AJAC. Remember, both proposals had flaws. And the Court basically said that none of that was relevant because Essex did not include four of eight $24 rings. Now, one thing that is required... You say that was a mistake, and if they talked to you about it, the mistake would have been fixed. Pardon me? You say that was a mistake on your part,  Well, they can't talk to one party without talking to all. Wasn't the answer to that yes? Well, it was abuse of discretion not to discuss it, yes. The theory is if they talked to you, it was a simple mistake. It could have been fixed easily. Yes, it obviously could have been fixed easily. And that's what discussions are intended to accomplish. That's what communications are intended to accomplish. I think that the one clear thing here is that both the solicitation and the source selection documents required a deficiency to be substantial and not minor. A minor deficiency didn't result in being unsatisfactory. I think a minor deficiency would be exactly, if you want to call it a deficiency at all, and perhaps it was, is leaving out four $24 parts when from an experience standpoint and a knowledge on the part of the agency, they knew Essex could perform this. That isn't the question. The question is should they have discussed the flaws by both sides because they had to discuss the flaws by Essex if they wanted to discuss flaws at all. Are you saying that you believe that Ajax solicitation, whatever its flaws, was technically non-compliant? Well, it was not found to be by the agency. All right. And I think that there were flaws in it that could be raised to the level of the deficiency of not including four $24 parts. But you don't point to anything in your brief. Well, in pages 7 through 12, I point to a larger number of things. I don't say that one is a deficiency or not. I do say that they did not comply. There are two instances where they didn't comply with schedule requirements. Now, if that's not compliant, so be it. But it certainly raises to the level of being a major deficiency. Like I don't believe that four $24 parts elevates the level of a major substantial deficiency. It may be a minor deficiency. I recognize that. But minor deficiencies aren't enough to call it not satisfactory. And that's a provision in both the source selection documents and the solicitation. You're into your rebuttal time. Would you like to save it? I reserve three minutes. Right. And you're down to about a minute 45. That's fine. Now, I believe Mr. Pixley is going to go first. Yes, Your Honor. May it please the Court. This is a straightforward case. Well, it may be. But can it ever be an abuse of discretion not to hold discussions in a best value contract? I believe that in this case there are two discussion clauses in the solicitation. And they make it expressly clear that it's the right of the agency, of the contracting officer, to decide whether to hold discussions. So it's not a yes or a no? If there's an abuse of discretion standard, if there's a limit, it's very high. And so it's possible, but certainly not in the facts of this case, where this protester maybe identified seven deficiencies, 15 weaknesses, and only one strength. Can you give us an example where you think discretion would be abused? An example, it's our position that with this language in the solicitation, it is the right of the contracting officer to decide whether to hold discussions or not. There is no obligation to do so. So it's unfettered? I believe so. Is there any authority that it's unfettered? No, I'm not aware of a case that says that. But alternatively, if there is discretion, it would have to be a situation where, certainly not in the facts of this case, where the differences between proposals were so minor. That's a possibility. Suppose we had a memo here from the contracting officers that said, we note that their bid's noncompliant because they only provided for four of these parts, but it should have been eight. We know this would have been corrected if we talked to them. We know there's a huge difference in price, but we think, why bother? Would that be an abuse of discretion not to hold discussions? Just to clarify your hypothetical, are we assuming that there are six other deficiencies or just the one? Well, just the one. Let's start with the one. If there's an identified deficiency, that would be sufficient under the language in the solicitation not to hold discussions. There would be no abuse of discretion. Under my hypothetical, no abuse of discretion. If the agency determines that they could make an award and they identified a deficiency, in the solicitation it does state that significant deficiencies may be used as a basis for eliminating a proposal from further consideration. Suppose the contracting officer said they provided for four and it needs to be eight. We know that was a mistake. They correct it. You know, there's a big price difference, but nonetheless, we're not going to have any discussions. Again, that would be, this is a very deferential standard to the agency, and if the onus is on the offeror to submit a compliant proposal. So I would argue that it would be the decision of the contracting officer to determine that there was a deficiency and they were not required to hold discussions. It's a close one, but again, I don't think it rises to the level of abuse of discretion, which is a very high standard. But in any event, in this case, it was not close at all. Again, seven deficiencies, 15 weaknesses. The Navy characterized Essex's proposal as technically unsatisfactory and that it would take a virtual or a total rewrite of the proposal to achieve a satisfactory rating. And in addition, the particular, one of the discussions clauses, this would be in Section M, states that discussions will be held if considered necessary by the contracting officers, but will only be conducted with those offerors determined to have a reasonable chance for reward. Well, certainly with that many problems in its proposal, there was not a reasonable chance. Now... Wasn't the Navy at least, you know, curious about whether it could save money? Sorry? Wasn't the Navy at least curious about whether it could save money? Well... Given the price differential? In this case, the Navy determined that Essex was not eligible for an award. They were just technically not acceptable. So they really didn't, they did not ignore the price. They looked at it, they found that Essex did offer the lowest price, but it was so low and given the number of deficiencies and weaknesses, they questioned whether Essex really understood the requirements. But they also determined that the awardee, AGEC, offered a fair and reasonable price and its proposal had value. Now, with respect to discussions, Essex is flatly wrong. They ignore the plain language in the solicitation. Discussions were simply not required. And we have these two provisions in Section M, but also the incorporated FAR provision, 52.215.1, which states the government intends to evaluate proposals and award a contract without discussions. So there's simply no requirement. Now, on the issue of the 11-month time period to award the contract, there is nothing in the solicitation that required the Navy to make awards sooner than it did. During this time period... What they're saying is they have plenty of time for discussions. You could have talked to them. That's the point. No, I understand that, but... So there was plenty of time for discussions, right? Well, they took 11 months without discussions. Maybe they would have taken longer with discussion if there was back and forth and permitting the offerors to revise proposals. But the point is discussions were not required and there was no time limit that the agency established for itself to make an award. During this period, the Navy did communicate with offerors and asked them to extend their proposals. They took the time they needed to evaluate proposals. With respect to prejudice, this is a non-issue. There was this 11-month period, but it affected all offerors equally, not just Essex. They can't point to anything. Given that the Navy rightfully concluded that Essex was not eligible for an award, it had a deeply flawed proposal, it was proper to ignore its low price. They just never got to that point. It really doesn't make sense to evaluate price on a technical proposal that you find unacceptable. There's no error there. Now, regarding Essex argues that the trial judge abused his discretion by granting the government's motion to strike the two declarations submitted by Essex CEO, Mr. Pawlowski. Under this Court's holding in axiom, that was clearly appropriate to exclude those declarations first. If you look at them, what they contain are Mr. Pawlowski's personal opinion as to the Navy's evaluation, his argument. He said that the Court of Federal Claims rested the decision solely on the basis that there was under no circumstances an obligation to conduct discussions, correct? That's right. The Court of Federal Claims stated there was no legal requirement. That's right. And they said if we were wrong about that, I'd have to go back and look at the arguments about the tie-downs. I'm sorry? He said the Court of Federal Claims said if there were a requirement for discussions, I'd have to look and see whether they should have had a discussion about the tie-downs. Right. Right. Yeah, I believe that was correct. So if we conclude that there could be an abuse of discretion not to conduct discussions under some circumstances, shouldn't we send it back to the Court of Federal Claims to apply the correct standard? If the Court determines that discussions should have been required, yeah, that may be appropriate to them. Not that the discussions should have been required. The Court of Federal Claims made a mistake in saying there is never an obligation to conduct discussions, that there is under some circumstances it may be an abuse of discretion not to conduct discussions. If we were to rule that way, should we send it back to the Court of Federal Claims to consider whether there was an abuse of discretion here? Well, first of all, I would just point out I don't think the Court said that discussions were never required. I don't believe that Judge Bruegge actually said that. Well, the section in which Judge Bruegge is discussing this point, since we're all on the same page, is 2040, and I guess it's the last paragraph beginning in line 22. I think that's the portion where the judge starts out by saying, so it's only if there's some obligation to carry on discussion that that becomes a problem, that being the compliant offer issue that was being discussed before. Right. I think what Judge Bruegge is doing here is he was examining, because before the trial court what the plaintiff was arguing was that there was a discrepancy between the two clauses, the may language, that reflect intent. And what Judge Bruegge found was that based upon that plain language, which plainly stated were his words, discussions were not required here. So I take it, where you're going with this, let me see if I can cut to the chase, is that you interpret Judge Bruegge as having resolved in that sentence that we're focusing on the question of whether there's a contractual obligation or an obligation in the solicitation to conduct discussions, not whether there could possibly be an abuse of discretion in a setting in which there's no actual obligation to conduct discussions. Is that your opinion of Judge Bruegge? Right. I think that's right. Yes, Your Honor. I think as the issue was originally raised by the plaintiff, they asserted that the solicitation never stated the government's intent to award without discussion. So it was, that's what their original argument was. So it was basically looking at that and deciding, well, what did the plain language say? That's really the context of this discussion. Very well. Why don't we hear from the other appellee. May it please the Court. I represent the awardee, appellee, AGEC, and I'm addressing only one issue, and that is standing. Under the terms of the solicitation, award was limited to proposals that conformed to the solicitation. Essex's proposal admittedly, and that's the key thing, admittedly did not conform to the solicitation. It concluded four attachment rings instead of the required eight. And this is a major discrepancy. The question is not price, it's function. And this is for the dual purpose of lifting and tying down the unit, which would be on aircraft and ships. That's what it says in the specification, paragraph 3.478, and that also ties in with functional requirements in other paragraphs. Paragraph 3.418, air transportability. You have lifting tie-down ring test and an air transportability test that ties in with all of those. Isn't this whole argument somewhat circular, though? I mean, you're saying he can't even come here and complain about lack of discussion because there was this error that he wanted to have discussion about in the solicitation, and you're saying that he can't even come and raise an appeal? Well, as far as discussions, even if the agency held discussions, there would have to be a determination for Essex to participate that they were in the competitive range. And given the circumstances of Essex's proposal, there was no obligation on the agency to include them in the competitive range. Now, when you say the circumstances, are you then referring back to the circumstance that they had too few of the rings? The admitted circumstances. Well, that makes Judge O'Malley's point, it seems to me, even stronger. What you're saying is not only is there no obligation to conduct discussions, but by virtue of their having made the mistake that they want to correct through discussions, there's no opportunity. Even the agency couldn't even bring them in if it wanted to. Is that your argument? Yes, and the key point is it's an admitted failure. For prejudice on the merits on a case, it's adjudicated. This is an admitted failure to meet solicitation requirements. So you're saying, let me make sure I understand your argument, you're saying that if the contracting officer had said, you know what, Essex has obviously made a typographical mistake here in putting four instead of eight. They obviously should have read and understood that it's eight. Let's just bring them, everybody else in, and give them an opportunity to correct this. You're saying that that would have been impermissible. The contracting officer would have had discretion to hold discussions, but on the other hand, the test is, for standing, a substantial chance of receiving the procurement. Well, but I'm trying to cut through the technical requirements and see whether what you're saying is that it would have been impermissible for the contracting officer to include within the scope of discussions somebody who, as you say, admittedly had an admittedly noncompliant solicitation, i.e., they were missing four of the rings. I'm saying not required. They could not have made it. Okay, but you're not saying it would have been foreclosed, are you? No. And you seem to agree that there couldn't be an abuse of discretion in not holding discussions, right? Under the terms of the solicitation, I'm not sure, because the solicitation in two places says that an award can be made without holding discussions, and it advises offerors to submit their best proposal the first time because it is the agency's intention to award without discussions, an intention that can be... So you're unsure as to whether there could be an abuse of discretion under these circumstances? I think perhaps if you come up with some situation where contracting personnel were being paid off, not to hold discussions, that would clearly be an abuse of discretion, but it would have to be something way, way out there. Very well. Thank you, Mr. Simon. Mr. Raley, I think there's a little bit of rebuttal time left if you want to use it. Briefly, very briefly, I just want to emphasize one point I made earlier, and I didn't supply the citation to the record. I said the solicitation and source collection documents require there to be major deficiencies in order to declare a proposal unacceptable. Those references are 1051 and 1248. As far as the price, the government's saying that their price was reasonable. Their price exceeded the government's estimate. And I think that's all I have. Thank you, Mr. Raley. We thank all counsel. The case is submitted.